### BIANCHI et ux. v. NEW ORLEANS PUBLIC SERVICE, Inc.

### No. 16767.

Court of Appeal of Louisiana. Orleans.

Nov. 28, 1938.

Alvin R. Christovich, of New Orleans, for appellant.

L. R. Wertheimer, of New Orleans, for appellees.

WESTERFIELD, Judge.

Mrs. Charles A. Bianchi brought this suit against the New Orleans Public Service, Inc., for $7,500 as damages for physical injuries resulting from a collision between a Chevrolet automobile which she was driving and a public omnibus owned by defendant and operated by one of its employees, whose alleged negligence is said to have been responsible for the accident. Mr. Bianchi joins his wife as co-plaintiff, claiming $325 as damage to his automobile and for medical expenses. The defendant denies that its employee was negligent in any particular and in the alternative pleads contributory negligence.

The case was tried by a jury and resulted in a verdict in favor of Mrs. Bianchi in the sum of $500 and in favor of Mr. Bianchi in the sum of $275. From a judgment based upon this verdict the defendant has appealed. Mrs. Bianchi has answered the appeal, asking for an increase in the award to the amount prayed for.

Charles A. Bianchi is a marine steward on the Steamship "Dixie". Mrs. Bianchi lived in the City of Gulfport, Mississippi. When the Dixie was in the Port of New Orleans, which occurred about once every seventeen days, Mrs. Bianchi was accustomed to drive her Chevrolet car from her home in Gulfport, Mississippi, or from her mother's home in Hazelhurst, Mississippi, which she frequently visited, to New Orleans. On the day of the accident, May 14, 1935, Mrs. Bianchi left Hazelhurst, Mississippi, at about 7 a. m. and drove her car to the City of New Orleans, a distance of about two hundred miles. She entered the City by way of Claiborne Avenue and from that street entered Nashville Avenue. She drove out Nashville Avenue to its intersection with Freret Street, when she collided with the defendant's street car at about 2 p. m.

There is a sketch or plan of the locality in evidence which indicates that Nashville Avenue from curb to curb measures thirty-six feet four inches. The middle of the street is covered by asphalt paving fifteen feet six inches wide with a graveled shoulder on each side. Freret Street is thirty-four feet ten inches wide with two street car tracks in the center.

According to Mrs. Bianchi's testimony she brought her car to a complete stop before entering Freret Street and looked in both directions without seeing any traffic, put it in low and started across the intersection. From the plan referred to, it appears that Mrs. Bianchi was nine feet five inches from the first rail of the nearest track and twenty-four feet three inches from the second track—the one used by the street car which collided with her. There is a curve in the street car tracks two hundred and twenty-four feet from the Nashville Avenue intersection and the explanation of Mrs. Bianchi's failure to see the street car is that it was either in the curve or beyond it and not within her vision. The street car is said to have approached Nashville Avenue at such speed as to reach the intersection before Mrs. Bianchi could complete the crossing. In other words, the street car traveled two hundred twenty-four feet or more while Mrs. Bianchi's automobile progressed twenty-four feet. After the accident, the automobile was on the sidewalk on the lower river side of the intersection, pointing in the direction from which the street car approached. Since Mrs. Bianchi entered the intersection from the lake side of Freret Street her car had completed the crossing and came to rest on the other side of the street on the sidewalk. The street car is variously estimated to have come to a stop between thirty and fifty feet below the intersection. No eye-witness other than Mrs. Bianchi testified on behalf of plaintiffs. Two mechanics, however, who examined plaintiffs' car after the accident, stated that it was "locked" in low gear, a circumstance relied upon by plaintiffs' counsel as corroborating Mrs. Bianchi's testimony to the effect that she had stopped before entering the intersection and was traveling very slowly when the collision occurred. Other witnesses for plaintiff testified as to the location of the street car and automobile after the accident.

On the other hand, John Blume, the conductor of the street car, declared that his car approached Nashville Avenue at a speed of about fifteen miles per hour, which he said was one-half of its maximum speed; that the street car had stopped on State Street, one block above Nashville Avenue for a red traffic light; that as the street car neared Nashville Avenue he heard the motorman sound his gong and he looked to his right and saw a negro, afterwards identified as Harrison Carter, waiting on the near side of the intersection; that he saw the motorman wave to Carter to cross the street as the car did not stop on that side of the intersection; that the speed of the street car was reduced to about ten or twelve miles per hour as it entered the Nashville intersection and that he saw Mrs. Bianchi's car about twenty-five or thirty feet from the street car, running at the rate of about thirty-five miles per hour, and that it swerved a little to the right just before making contact with the car.

David Horaist, the motorman, also testified that the street car was running about fifteen miles per hour between State and Freret Streets; that he saw Harrison Carter waiting for the car and motioned for him to cross the street; that he looked in the direction of the lake on Nashville Avenue as he entered the intersection without seeing any automobile approaching; that as he reached the middle of the intersection, he saw Mrs. Bianchi's car traveling at about forty miles per hour, when he tried to stop, but that Mrs. Bianchi continued with unabated speed until she collided with his car; that after the accident when he approached Mrs. Bianchi, he heard her exclaim "Thank God I wasn't killed, I didn't know there was a car track there."

Edna Anderson, a negro house girl who was a passenger in the street car on the side nearest Mrs. Bianchi, testified that she saw the Bianchi automobile when it was about thirty feet away from the street car, moving rapidly, and that without stopping or giving any warning it crossed Freret Street directly in front of the street car.

Leopold Koechert, who was also seated on the lakeside of the street car with the window open, testified that it was running about ten or twelve miles an hour after entering the intersection and that he saw the Bianchi automobile about one hundred feet away traveling thirty-five miles per hour, which speed was maintained until struck by the street car.

Harrison Carter, the negro who was waiting for the street car, testified that he saw the Bianchi automobile approaching rapidly when it was about twenty or twenty-five feet from Freret Street and that the automobile did not stop or abate its speed before being struck.

The only person who testified that the street car was going more than fifteen miles per hour at any time was Steve

Franck, an aged vendor of "snowballs." He stated that he was pushing his cart on Freret Street near State when the street car passed him at what he considered to be a rapid rate. He estimated its speed at about twenty-five miles per hour. This witness, in a measure, corroborates the statement of the motorman concerning Mrs. Bianchi's exclamation just after the accident. He testified that he heard her say "I am glad he saved my life", though he did not know to whom the remark was addressed. Mrs. Bianchi denied making this statement.

It is obvious that the testimony of the eye-witnesses largely preponderates in favor of the defendant and we are forced to the conclusion that Mrs. Bianchi did not know of the presence of street car tracks on Freret Street as the motorman claims she admitted after the accident or that she was unmindful of their presence. We cannot credit her statement to the effect that she stopped before entering the intersection and moved forward again in first speed very slowly or that she looked in the direction from which the street car approached Nashville Avenue without seeing the street car, for it is admitted that she had a clear view for at least two hundred twenty-four feet. Moreover, it is extremely unlikely that the street car traversed two hundred and twenty-four feet while she was going only twenty-four feet or ten times her speed. In the first place, no one but the snowball vendor estimated the speed of the street car at any time beyond fifteen miles per hour. It had stopped in obedience to the semaphore signal on State Street, one block before reaching the scene of the accident. It was Mrs. Bianchi's duty to stop before entering the intersection. Art. VII, Section 2 (b) Traffic Ordinance No. 13,702 C.C.S. as amended by Ordinance No. 14,104 C.C.S. and Highway Regulatory Act No. 21 of 1932, Section 3, Rule 17. We are convinced that Mrs. Bianchi did not stop and the accident is entirely due to her failure to observe the traffic regulations in that respect as well as with regard to excessive speed.

The only circumstance which to our mind supports Mrs. Bianchi's statement concerning her speed in crossing the intersection is that given by the two mechanics, Messrs. Moore and Trahant, to the effect that after the accident the gears of the Bianchi automobile were "locked" in low. Counsel for defendant points to the testimony of Moore to the effect that a vio-

lent collision might cause a shifting of the gears and that they might be "frozen" and then might not. This explanation may be sound and, on the other hand, it may not, but as against the positive testimony in the record concerning Mrs. Bianchi's speed and carelessness the testimony with reference to the locked gears cannot prevail.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiffs' suit at their cost.

Reversed.